# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., JOSEPH RAJKOVACZ, CARL  SCHAEFER, and CARL SCHAEFER LLC, individually and on behalf of all others similarly situated, | Civil No. 05-2809 (JRT/JJG) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| SUPERVALU, INC., | |
| Defendant. | |

Randall Herrick-Stare and Paul D. Cullen, Sr., **THE CULLEN LAW FIRM, PLLC**, 1101 30th Street Northwest, Suite 300, Washington, DC 20007; Andrew J. Morrison, **KOLL MORRISON CHARPENTIER & HAGSTROM**, 332 Minnesota Street, Suite W-1430, St. Paul, MN 55101; for plaintiffs.

Steven J. Wells and Gabrielle D. Mead, **DORSEY & WHITNEY, LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402, for defendant.

Plaintiffs Owner-Operator Independent Drivers Association, Inc. ("OOIDA"), Joseph Rajkovacz, Carl Schaefer, and Carl Schaefer LLC have brought this action alleging that defendant Supervalu, Inc. ("Supervalu") has violated 49 U.S.C. § 14103. This Order addresses all the motions pending before this Court.[1]

---

[1] On November 1, 2006, the Court heard oral argument on Supervalu's motion for summary judgment.  On November 3, 2006, plaintiffs filed a motion for partial summary

(Footnote continued on next page.)

In sum, the Court denies in part and grants in part Supervalu's motion for summary judgment as to plaintiffs' claim for declaratory and injunctive relief (Count I) and grants Supervalu's motion as to the issue of restitution (Count II). The Court denies plaintiffs' motion for partial summary judgment. The Court denies plaintiffs' motion to strike the eleventh defense. Finally, the Court grants plaintiffs' motion for class certification.[2]

## BACKGROUND

Plaintiff OOIDA is a non-profit trade association of professional truck drivers who own and operate heavy-duty trucks. OOIDA brings this action in a representative capacity. OOIDA drivers typically contract with vendors for transportation services and many transport goods to defendant Supervalu, a grocery wholesaler and retailer. Plaintiff Joseph Rajkovacz was an independent truck owner-operator providing interstate transportation of property for compensation on a per-load basis, and he delivered goods

_____

(Footnote continued.)

judgment on Count I of the Complaint, seeking a declaratory judgment that Supervalu violated 49 U.S.C. § 14103. The Court denied the request for oral argument on plaintiffs' motion for partial summary judgment. On December 18, 2006, the Court heard oral argument on plaintiffs' motion for class certification. On March 7, 2007, the Court heard oral argument on plaintiffs' motion to strike the eleventh defense.

[2] In a Report and Recommendation dated February 16, 2007, Magistrate Judge Jeanne Graham recommended that plaintiffs' motion to strike the eighth defense [Docket No. 19] be denied. The eighth defense asserts that plaintiffs have failed to reasonably mitigate their claimed damages. Given a lack of controlling decisions or statutes that would foreclose Supervalu's eighth defense, the Magistrate Judge reasoned that it would be improper to strike the defense on the basis of legal insufficiency. Because no objections were filed, the Court adopted the Report and Recommendation without discussion on March 20, 2007. As explained below, the Court rules that § 14013 does not allow an award of damages to private plaintiffs. As such, whether plaintiffs have reasonably mitigated their claimed damages is no longer a relevant issue.

to Supervalu during the class period.  He left the business in April 2006, but he is still a member of OOIDA.   Plaintiff Carl Schaefer is a one-person motor carrier who provides interstate transportation of property for compensation on a per-load basis.  Plaintiff Carl Schaefer LLC is a limited liability company of which Carl Schaefer is the sole owner and manager.[3]

The contracts for transportation services often do not specify who is responsible for unloading or "lumping" upon delivery of goods to Supervalu's distribution centers.  In the past, small groups of unloaders or "lumpers" unaffiliated with Supervalu would gather at Supervalu's distribution centers and offer unloading services to drivers.  During 2005, Supervalu entered into exclusive contracts with professional unloading services so that only one lumping service provider would be present at any one of its distribution centers.

In March 2005, Supervalu adopted a new insurance coverage requirement for drivers who wished to unload their own vehicles.  Supervalu required the drivers to show proof of general liability insurance of $3 million annual aggregate and $1 million per occurrence limit, automobile liability insurance in the amount of $1 million combined single limit coverage, and fidelity bond or crime insurance of $50,000, although the last requirement was promptly eliminated after being initially posted.   This insurance coverage requirement was in excess of the statutory minimum under 49 U.S.C. § 31139(b).   Section 31139(b) requires those who transport property by commercial

---

[3] Schaefer is unsure whether he delivered to Supervalu as a sole proprietor or as an LLC.

motor vehicle to carry insurance of at least $750,000.   In August 2005, Supervalu reduced the insurance coverage requirement to $1 million aggregate and $1 million per occurrence.   After plaintiffs commenced this lawsuit on December 5, 2005, Supervalu modified the insurance coverage requirement once again, and now only requires that drivers who wish to unload their own vehicles show proof of compliance with 49 U.S.C. § 31139(b).

Plaintiffs contend that the insurance coverage requirement, together with Supervalu's practice of receiving goods on pallets without the provision of proper unloading equipment, requires or coerces drivers to use and pay for the professional unloading services contracted by Supervalu, in violation of 49 U.S.C. § 14103.   On Count I, plaintiffs seek declaratory and injunctive relief addressed at the increased insurance coverage requirement and Supervalu's practice of receiving palletized freight without making available mechanical unloading equipment to drivers.   On Count II, plaintiffs seek restitution for the alleged violations of § 14103.   Specifically, plaintiffs seek accounting and disgorgement of money paid by drivers for lumping services between March 28 and December 20 of 2005.[4]

---

[4] Supervalu filed counterclaims for declaratory judgment.   On Count I, Supervalu seeks a declaratory order that the insurance requirements Supervalu imposed in August 2005 would not violate § 14103.   Counts II and III seek declarations that Supervalu has not violated § 14103 because it offers drivers the option to unload their vehicles themselves.

## ANALYSIS

I.   **SUPERVALU'S MOTION FOR SUMMARY JUDGMENT AND
     PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

   **A.     Standard of Review**

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

   **B.     Declaratory Relief**

Plaintiffs contend that Supervalu has violated sections 14103(a) and (b).  *See* 49 U.S.C. §§ 14103(a)-(b).    Section 14103(a) mandates that if "a shipper or receiver of property requires that any person who owns or operates a motor vehicle transporting property in interstate commerce . . . be assisted in the loading or unloading of such vehicle, the shipper or receiver shall be responsible for providing such assistance or shall compensate the owner or operator for all [associated] costs . . . ."  49 U.S.C. § 14103(a).  Section 14103(b) prohibits "coerci[ng] or attempt[ing] to coerce any person providing transportation of property by motor vehicle for compensation in interstate commerce . . .

to employ or pay one or more persons to load or unload any part of such property . . . ." 49 U.S.C. § 14103(b).  In Count I, plaintiffs seek a declaration that Supervalu's practices have in effect required or coerced drivers into paying for professional unloading services in violation of 49 U.S.C. § 14103.  Supervalu moves for summary judgment on plaintiffs' claim for declaratory relief.  Plaintiffs also move for summary judgment on their claim for declaratory relief.

Plaintiffs assert that Supervalu's requirement of proof-of-insurance coverage above the statutory minimum effectively precluded the drivers' option to unload their trucks themselves because the drivers could not afford such additional insurance coverage.  Supervalu responds by emphasizing that it voluntarily ceased the requirement for increased insurance coverage.  However, "[a] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."  *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).  In its response to plaintiffs' motion for partial summary judgment, Supervalu further argues that fact issues preclude judgment as a matter of law for plaintiffs on this claim. Specifically, Supervalu argues that the company cannot be considered to have "required" drivers to hire lumpers because it allowed drivers the option to unload themselves if they bought the additional insurance.  According to Supervalu, the insurance coverage requirement could be construed as a requirement to hire lumpers only if the insurance coverage is unreasonable.

The Court agrees that the reasonableness of the insurance coverage requirement is key to the determination of whether Supervalu violated § 14103(a).  Supervalu cannot be

considered to have required the use of lumpers solely by its imposition of a requirement for insurance above the statutory minimum if the insurance coverage requirement is reasonable. On the other hand, if the insurance coverage requirement was unreasonable and unattainable for drivers, Supervalu could be considered to have in effect required drivers to pay for lumping services in violation of § 14103(a). The reasonableness of the insurance coverage requirement hinges in part on whether the coverage requirement was tailored to the risks created by having drivers unload their trucks themselves. The reasonableness also likely depends on the practices of other receivers in the industry. Merits discovery has not yet commenced, but the evidence before the Court shows that the reasonableness of the insurance coverage requirement is a dispute of material fact. As such, the Court denies both parties' motions for summary judgment on plaintiffs' claim for declaratory relief on this issue.[5]

Plaintiffs further argue that drivers were required and coerced into using the lumping services designated by Supervalu because they were denied access to the warehouse and were not provided with mechanical equipment necessary to unload

---

[5] In their complaint, plaintiffs also claim that the insurance coverage requirement violates § 14103(b), which forbids "coercion" to use lumpers. However, plaintiffs have not sought summary judgment on their claim under § 14103(b). The determination of whether drivers were coerced by the insurance coverage requirement will also require a fact-laden inquiry into the reasonableness of the insurance coverage requirement. In addition, it will require an individualized inquiry as to each driver's situation. As such, the Court concludes that issues of fact also preclude summary judgment on plaintiffs' claims under § 14103(b). For this reason, the Court denies Supervalu's motion for summary judgment on this claim.

palletized goods themselves.[6]   According to Supervalu, palletizing grocery products is standard practice in the industry and drivers are free to bring and use their own equipment to unload the pallets.

The Court concludes that, at least in theory, absence of access to the mechanized equipment plus the receipt of palletized goods could equal coercion to hire lumpers, in violation of 49 U.S.C. § 14103(b).  These practices of Supervalu must be examined in light of the industry's standard practices, and in light of the practical implications of requiring drivers to bring their own unloading equipment.  Therefore, the Court also denies Supervalu's motion for summary judgment on plaintiffs' claim for declaratory relief on this issue.

## C.    Injunctive Relief

Section 14704(a)(1) makes available injunctive relief to a private plaintiff for violations of § 14103.  Plaintiffs ask this Court to enjoin Supervalu from future violations of 49 U.S.C. § 14103 and "from any acts of retaliation, harassment, or intimidation against class members and others who may assist and/or participate in this actions [sic]." (Am. Compl. ¶ 12.)   Supervalu argues that because it voluntarily eliminated its requirement for increased insurance coverage, injunctive relief as to the insurance

---

[6] Plaintiffs have explained that drivers typically do not bring with them the mechanical means of moving the cargo, but have not fully explained why this is not practical.  Supervalu stated in December of 2005 that it would make hand jacks available to drivers free of charge, but plaintiffs provide evidence that functioning jacks are not always available.  In their motion for partial summary judgment, plaintiffs do not seek declaratory or injunctive relief on the issue of access to mechanical equipment and receipt of palletized goods.  Their motion is limited to Supervalu's requirement for insurance coverage above the statutory minimum.

requirement is not appropriate.  In essence, Supervalu argues that there is no further need for an injunction once the alleged wrongful behavior has ended.

A "court's power to grant injunctive relief survives discontinuance of illegal conduct." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).  As the Supreme Court explained:

> The purpose of an injunction is to prevent future violations, and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive . . . .  To be considered on issue as to appropriateness of granting injunction against now-discontinued acts are bona fides of expressed intent to comply, effectiveness of discontinuance, and, in some cases, character of past violations.

*Id.*  Thus, the question here is whether plaintiffs have shown that there is "a cognizable danger of recurrent violation."  *Id.*

Plaintiffs argue that Supervalu's cessation of its practice is not an expression of its bona fide intent to comply.  Plaintiffs point to the fact that Supervalu in its counterclaims seek a declaratory judgment that would approve Supervalu's August 2005 policy and that it changed its behavior only in response to litigation.  Under these circumstances, the Court finds that plaintiffs have shown that there is a cognizable danger of recurrent violation.  The Court, therefore, denies Supervalu's motion as to the issue of injunctive relief from future violations of § 14103.  As to the claim to injunctive relief from future harassment, however, the Court finds no facts that indicate that Supervalu would harass or retaliate against plaintiffs in this case.  Therefore, the Court grants Supervalu's motion as to the issue of injunctive relief from future harassment.

**D.      Restitution**

Plaintiffs argue that they are entitled to restitution for Supervalu's violation of § 14103.  The remedial scheme for violation of § 14103 is provided in § 14905 and § 14704.  Section 14905 defines criminal penalties and makes violators liable to the government for civil penalties. 49 U.S.C. § 14905.  Section 14704(a)(1), which provides for a private right of action for violation of § 14103, provides that "[a] person may bring a civil action for injunctive relief for violations of sections . . . 14103."  49 U.S.C. § 14704(a)(1).    Section  14704(a)(2)  provides  that  a  "carrier  or  broker  providing transportation or service . . . is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part."  *Id.* §  14704(a)(2).  The Court must determine whether restitution is an available remedy under this statutory scheme.

Section 14704 provides monetary relief against carriers or brokers, but it is silent as to monetary relief against receivers of property like Supervalu.  Indeed, there is no statute that explicitly authorizes restitution as a remedy for an alleged violation of § 14103 against a receiver of property.  The Court interprets the statutory silence as an indication that Congress intended to limit private actions for monetary relief to actions against carriers or brokers and not authorize private actions for monetary relief against receivers like Supervalu.  As explained below, the Court concludes that the remedial scheme provided in sections 14905 and 14704 is comprehensive.

Generally, when a statute expressly provides for specified remedies, courts must not read additional remedies into the statute.  *See Alexander v. Sandoval*, 532 U.S. 275,

290 (2001) (explaining that "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others"). As specified above, § 14905 provides both civil and criminal penalties in actions brought by the government. Section 14704 deals with private rights of action and provides both monetary and injunctive relief against wrongdoers specified as carriers and brokers, but only injunctive relief against receivers. The remedial scheme provides a detailed method of enforcing § 14103. The Court determines that if "Congress wished to provide a private damages remedy, it knew how to do so and [would have done] so expressly." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 21 (1979).

Plaintiffs rely on *F.T.C. v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312 (8th Cir. 1991), to argue that when Congress provides for the issuance of a permanent injunction, it invokes the broad equity jurisdiction of the district court. *Security Rare Coin* held that when a statute provides for injunctive relief, the district court may grant ancillary equitable relief. *Id.* at 1314. However, *Security Rare Coin* was a case brought by the government, not by a private plaintiff. Likewise, the two Supreme Court cases that plaintiffs reply upon, *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946), and *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288 (1960), were both brought by the government, rather than by a private plaintiff. Virtually all the cases in which the courts have allowed the imposition of equitable remedies not mentioned in the statute are enforcement actions by government agencies. Courts have been more willing to allow broader equitable remedies when the government brings an action because the government is presumed to be more interested in the public good and furtherance of the

statutory purpose than is a private plaintiff. *United States v. Lane Labs-USA, Inc.*, 427 F.3d 219, 231 (3d Cir. 2005).

In private plaintiff suits, the broad equity jurisdiction of a district court is evoked only when the statute in question grants "open-ended enforcement powers to the court," such as when a statute broadly grants the courts authority to "restrain violations" without saying more. *Id.* at 225. The statutory scheme at issue here does not contain such an open-ended invitation to construe unspecified equitable relief.[7]

The Court, therefore, concludes that a receiver of goods like Supervalu who violates § 14103 may be enjoined in a private action or be subject to government action, but may not be sued for a monetary award by private plaintiffs. Accordingly, the Court grants Supervalu's motion for summary judgment on Count II of plaintiffs' complaint.

## II.    PLAINTIFFS' MOTION TO STRIKE ELEVENTH DEFENSE

Plaintiffs move to strike Supervalu's eleventh defense.[8] The eleventh defense states, "Plaintiffs have been paid by shippers or others for any lumping service costs incurred at Supervalu facilities during the applicable time period." (Answer to Am.

---

[7] Plaintiffs contend that 49 U.S.C. § 13103, which in part states that "the remedies provided under this part are in addition to remedies existing under another law or common law," demonstrates Congress's intent to permit expansive remedies under § 14704. 49 U.S.C. § 13103. However, § 13103 simply states that the rights of action and remedies specified under Title 49, Subsection IV, Part B do not preempt other causes of action and remedies available under those other causes of action. Because plaintiffs have alleged violations only under § 14103 and have not alleged any other causes of action, § 13103 is not applicable in this case.

[8] Plaintiffs move to strike Supervalu's eleventh defense pursuant to Federal Rules of Civil Procedure 12(f), 12(c) and 56. Fed. R. Civ. P. 12(f) ("a court may order stricken from any pleading any insufficient defense); Fed. R. Civ. P. 12(c) (motion for judgment on the pleadings); Fed. R. Civ. P. 56 (motion for summary judgment).

Compl. ¶ 61.)   Plaintiffs essentially argue that whether shippers or others have reimbursed drivers for their lumping costs is irrelevant under 49 U.S.C. § 14103(a) because the statute is immediately violated when the receiver (Supervalu) requires drivers use of lumpers and refuses to pay for it.[9]   Section 14103(a) states:

> (a) Shipper responsible for assisting.—Whenever a shipper or receiver of property requires that any person who owns or operates a motor vehicle transporting property in interstate commerce . . . be assisted in the loading or unloading of such vehicle, the shipper or receiver shall be responsible for providing such assistance or shall compensate the owner or operator for all costs associated with securing and compensating the person or persons providing such assistance.

49 U.S.C. § 14103(a).

Supervalu relies on the plain language of the statute.   According to Supervalu, a statutory violation occurs only if plaintiffs show that neither the receiver nor the shipper compensated the driver because the statute states "the **shipper or receiver** shall be responsible for providing such assistance or shall compensate the owner or operator . . . ." *Id.* (emphasis added).   Supervalu emphasizes that it would not make sense if the statute required the receiver to pay even when the shipper pays, and that it would be unfair for plaintiffs to receive payment from both shippers and receivers.

Plaintiffs argue that Congress composed the statute to accomplish an economy of language, and that the plain language of the statute should not govern its interpretation.

---

[9] Plaintiffs focus on the failure of Supervalu to pay, rather than the receipt of funds by plaintiffs, and this focus is consistent with plaintiffs' characterization of their claim for monetary relief.   In their amended complaint, plaintiffs seek an equitable monetary award linked to Supervalu's unjust profits, rather than compensatory damages.   However, as explained above, the Court concludes that monetary relief is not available to plaintiffs under the statutory scheme at issue.

Rather, plaintiffs argue that the statute should be interpreted as mandating that when shippers require use of lumpers for loading then shippers should pay, and that when receivers require use of lumpers for unloading then receivers should pay.  Plaintiffs emphasize that they are not seeking payment from both the receiver and shipper – they want the receivers to pay for unloading so drivers are not forced to seek reimbursement from the shippers or others.

Plaintiffs further argue that Supervalu's interpretation frustrates the fundamental purpose of the statute, which is to protect drivers.   They emphasize that even if drivers convince shippers or others to reimburse them, they have been harmed because receivers forced upon drivers the burden of seeking reimbursement.   According to plaintiffs, allowing a reimbursement defense "allows the bully to keep the proceeds of its shakedown if the victim is able to force or finagle the shifting of that cost to another." (Mem. In Supp. Of Mot. To Strike Eleventh Defense at 8.)

The Court is sympathetic to plaintiffs' concerns about the burden placed on drivers by the interpretation of the statute urged by Supervalu.  However, the plain language of the statute binds the Court in its interpretation.  Allowing payment by a shipper to relieve a receiver from having to compensate a driver when the receiver requires a driver to use lumpers may be burdensome for the driver, but this interpretation of the statute is not absurd.  *See Small v. United States*, 544 U.S. 385, 404 (2005) (discussing canon against absurdities).   To prove that Supervalu violated § 14103(a), plaintiffs must show that

neither a receiver nor a shipper paid a driver for lumping service costs incurred at Supervalu.  The Court therefore denies plaintiffs' motion to strike the eleventh defense.[10]

## III.    PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs seek to certify a class under Federal Rule of Civil Procedure 23.  *See* Fed. R. Civ. P. 23.  Their proposed class definition is: "All owner operators of motor-vehicles used to deliver 'carrier loads' to Supervalu's distribution centers between March 28 and December 21, 2005, who a) at the time of delivery, did not meet Supervalu's minimum proof of insurance requirement then in effect; and b) paid for lumping services."[11] (Pls.' Mot. For Class Certification Reply Mem. at 2.)

Federal Rule of Civil Procedure 23 establishes a two-step analysis to determine whether class certification is appropriate.  First, plaintiffs must satisfy the four prerequisites of Federal Rule Civil Procedure 23(a).  Second, the action must satisfy at least one of three subdivisions of Federal Rule Civil Procedure 23(b).  District courts have broad discretion to decide whether to certify a class under Rule 23.  *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 573 (D. Minn. 1995).

---

[10] Under the Court's interpretation, plaintiffs must prove as an element of the offense that neither the shipper nor receiver paid for the lumping costs.  It is therefore improper to characterize this as an affirmative defense, but there is nevertheless no reason to strike it.

[11] Plaintiffs modified their proposed class definition in their reply brief to address shortcomings that Supervalu identified in plaintiffs' original definition of the proposed class.

### A.      Requirements of Federal Rule of Civil Procedure 23(a)

A member of a class may sue as a representative party on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

### 1.      Numerosity

The parties do not dispute that the class is so numerous that joinder of all members is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  Plaintiffs suggest that there are thousands of potential class members but plaintiffs have not yet identified drivers who did not have the insurance coverage imposed by Supervalu and paid for lumping services.

### 2.      Common Questions of Law or Fact

The second requirement is that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The commonality requirement can be satisfied even when the individuals are not identically situated, as long as the legal question linking the class members is substantially related to the resolution of the litigation.  *See DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).

The common legal question is whether Supervalu violated 49 U.S.C. § 14103(a) by requiring drivers to use lumping services without paying the costs of the services.[12]

_____

[12] It is not clear to the Court whether plaintiffs had intended to pursue claims under 49 U.S.C. § 14103(b) as a class.  Supervalu argues that an individualized examination of why a

(Footnote continued on next page.)

The proposed class definition unites drivers with a common factual circumstance, namely, those drivers that did not have the required insurance and had to pay for lumping services.   Defendant argues that the proposed class definition cannot satisfy the commonality requirement because the Court would have to conduct an individualized inquiry into the contracts governing each driver to determine if the driver was reimbursed for the costs of the lumping services.   Because the proposed class definition is limited to those drivers that "paid" for lumping services, the Court understands that those drivers that were reimbursed by receivers or shippers would not be included in the class and could not pose commonality problems.   The Court therefore concludes that the requirements of Rule 23(a)(2) are satisfied.

### 3.   Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."   Fed. R. Civ. P. 23(a)(3).   The burden is "fairly easily met so long as other class members have claims similar to the named

_____

(Footnote continued.)

driver used a lumping service must be conducted to determine whether or not Supervalu illegally "coerced" that driver.   The Court finds these arguments to be persuasive, and therefore limits class certification to claims that arise under 49 U.S.C. § 14103(a).   Because plaintiffs did not precisely address this issue in their briefing, the Court would be open to reexamining the issue on a motion for reconsideration, if necessary.

Plaintiffs concede that commonality issues preclude plaintiffs from pursuing as a class those claims that arise from Supervalu's practices of denying drivers access to the warehouse and foreclosing them from using mechanical equipment necessary to unload palletized goods by themselves.   These practices of Supervalu were not uniformly implemented.   As such, plaintiffs will pursue as a class only those claims arising from Supervalu's imposition of the insurance coverage requirement.

plaintiff." *DeBoer*, 64 F.3d at 1174.  The proposed class definition ensures that each class member lacked insurance coverage required by Supervalu and paid for lumping services.  The claims of the putative class arise from this common factual experience.  Because class representatives shared this experience with the putative class, the Court concludes that the typicality requirement is met.

### 4.     Adequacy

The focus of the adequacy requirement of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel.  *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-563 (8th Cir. 1982).  Supervalu does not dispute that plaintiffs' counsel is qualified, but argues that the named plaintiffs are not adequate representatives.

Supervalu argues that OOIDA is not an adequate representative because its mission is to protect small, independent owner-operators and therefore it cannot adequately represent the large carriers in the putative class.  The Court sees no evidence that the interests of the large and small carriers are antagonistic in this litigation.  Further, large carriers can opt out of the class if they believe that their interests are not adequately represented.   As such, the Court finds that OOIDA would be an adequate class representative.  *See In re Potash Antitrust Litig.*, 159 F.R.D. 682, 692 (D. Minn. 1995) (holding that small purchasers of potash could adequately represent the interests of large purchasers in the class).

Supervalu further argues that Rajkovacz is not an adequate representative because he is no longer driving, and therefore injunctive relief would have no effect on him, and that Schaefer is not an adequate representative because he only paid for a lumper once at a Supervalu and has not delivered to Supervalu since April 2005.  If Rajkovacz and Schaefer no longer deliver goods to Supervalu, they may lack standing to pursue injunctive relief.  *See Rainy Lake One Stop v. Marigold Foods*, 195 F.3d 430, 437 (8th Cir. 1999).  Given that injunctive and declaratory relief are the only forms of relief that plaintiffs may pursue (in light of this Court's ruling on the availability of a monetary relief under the statutory scheme at issue), the Court has some concern that Rajkovacz and Schaefer may not vigorously pursue these claims of relief.[13]  Nevertheless, it is clear that the interests of Rajkovacz and Schaefer are in no way antagonistic to the rest of the putative class, and that the class representatives have thus far vigorously pursued the claims.  The Court therefore concludes that the adequacy requirement is met at this time.

**B.     Rule 23(b)**

As noted above, the class cannot be certified unless the actions satisfy at least one of three subdivisions of Federal Rule Civil Procedure 23(b).  Plaintiffs seek certification

---

[13] Supervalu also points out that both of the named plaintiffs were at times reimbursed for the fee that they paid to lumpers.  Based on the Court's interpretation of § 14103(a), as discussed above, payment by a shipper of the costs of lumping services is fatal to a claim under § 14103(a).  However, the evidence before the Court at this time does not show that Rajkovacz and Schaefer were always reimbursed for lumping services paid at Supervalu facilities, nor that shippers (as opposed to carriers) provided the reimbursements.

under Rule 23(b)(2) and Rule 23(b)(3).[14]   Rule 23(b)(2) provides that a class action may

be maintained when "the party opposing the class has acted or refused to act on grounds

generally applicable to the class, thereby making appropriate final injunctive relief or

corresponding declaratory relief to the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "If

the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been

requested, the action usually should be allowed to proceed under subdivision (b)(2)."  7A

Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1775, at 470 (2d

ed. 1986);  *see DeBoer*, 64 F.3d at 1175.   The Court has found that plaintiffs have

satisfied the Rule 23(a) and only injunctive and declaratory relief is left in this case.  As

discussed above, the proposed class definition unites drivers sharing the common

experience of having paid for lumping services and having lacked the insurance coverage

required by Supervalu.   Because common claims arise from this common factual

experience, the Court finds that the class is also sufficiently cohesive.  *See In re St. Jude*

*Med., Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005).  The Court therefore concludes that Rule

23(b)(2) is satisfied.

In conclusion, the Court finds that the proposed class satisfies the requirements of

Rule 23.  Accordingly, the Court certifies this action as a class action on behalf of the

class defined above.


This case will be placed on the Court's next available trial calendar.

---

[14]  Because the Court concludes that Rule 23(b)(2) is satisfied, it need not engage in
analysis under Rule 23(b)(3).

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Supervalu's Motion for Summary Judgment [Docket No. 48] is **GRANTED in part** and **DENIED in part**, as follows.  The motion is granted as to Count II of the Amended Complaint (restitution).  As for Count I, the motion is granted as to plaintiffs' claim for injunctive relief from "future harassment," and denied as to plaintiffs' claim for declaratory and injunctive relief regarding Supervalu's insurance policy requirement and receipt of palletized goods without access to mechanical equipment.

2.      Plaintiffs' Motion for Partial Summary Judgment [Docket No. 98] is **DENIED**.

3.      Plaintiffs' Motion for Class Certification [Docket No. 32] is **GRANTED**.

4.      Plaintiffs' Motion to Strike the Eleventh Defense [Docket No. 161] is **DENIED**.


DATED:    May 31, 2007                        _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                         JOHN R. TUNHEIM
                                              United States District Judge