# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., JOSEPH RAJKOVACZ, CARL SCHAEFER, and CARL SCHAEFER LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUPERVALU, INC,<br><br>Defendant. | Civil No. 05-2809 (JRT/JJG)<br><br>**ORDER** |

Andrew J. Morrison, **KOLL MORRISON CHARPENTIER & HAGSTROM**, 332 Minnesota Street, Suite W-1430, St. Paul, MN 55101; Paul D. Cullen, Jr., Paul D. Cullen, Sr., and Randall Herrick-Stare, **THE CULLEN LAW FIRM, PLLC**, 1101 30th Street Northwest, Suite 300, Washington, D.C.  20007; for plaintiffs.

Gabrielle D. Mead, Steven J. Wells, Michael Iwan, and Steven J. McLaird, **DORSEY & WHITNEY, LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN  55402, for defendant.

Plaintiffs Owner-Operator Independent Drivers Association, Inc. ("OOIDA"), Joseph Rajkovacz, Carl Schaefer, and Carl Schaefer LLC have brought this action alleging that defendant Supervalu, Inc. ("Supervalu") has violated 49 U.S.C. § 14103. This matter is before the Court on plaintiffs' motion for reconsideration of an Order dated May 31, 2007.[1]  For the reasons set forth below, the Court grants the motion.

---

[1] That order was amended in a non-substantive manner on June 27, 2007.

## BACKGROUND

The full factual background of this action was set forth in this Court's prior order. That background is repeated below only to the extent necessary for plaintiffs' motion for reconsideration.

Plaintiffs have all engaged in the delivery of goods to defendant, a grocery wholesaler and retailer. The contracts for transportation services often do not specify who is responsible for unloading, or "lumping," upon the delivery of the goods to Supervalu's distribution centers. In the past, small groups of unloaders, or "lumpers," unaffiliated with Supervalu would gather at Supervalu's distribution centers and offer unloading services to drivers. During 2005, Supervalu entered into exclusive contracts with professional unloading services so that only one lumping service provider would be present at each of its distribution centers.

In March 2005, Supervalu adopted a new insurance coverage requirement for drivers who wished to unload their own vehicles. Supervalu required the drivers to show proof of general liability insurance of $3 million annual aggregate and $1 million per occurrence limit, automobile liability insurance in the amount of $1 million combined single limit coverage, and fidelity bond or crime insurance of $50,000, although the last requirement was promptly eliminated after it was posted. This insurance coverage requirement was in excess of the statutory minimum required under 49 U.S.C. § 31139(b). Section 31139(b) requires those who transport property by commercial motor vehicle to carry insurance of at least $750,000. In August 2005, Supervalu reduced the insurance coverage requirement to $1 million aggregate and $1 million per occurrence.

After plaintiffs commenced this lawsuit on December 5, 2005, Supervalu modified the insurance coverage requirement once again, and now only requires that drivers who wish to unload their own vehicles show proof of compliance with 49 U.S.C. § 31139(b).

Plaintiffs contend that the insurance coverage requirement requires or attempts to coerce drivers to use and pay for the professional unloading services contracted by Supervalu, in violation of 49 U.S.C. § 14103.  Plaintiffs seek declaratory and injunctive relief for these alleged violations.

On May 31, 2007, this Court certified a plaintiff class defined as follows: all owners or operators of motor-vehicles used to deliver "carrier loads" to Supervalu's distribution centers between March 28 and December 21, 2005, who a) at the time of delivery, did not meet Supervalu's minimum proof of insurance requirement then in effect; and b) paid for lumping services.  The Court noted, however, that it was certifying this class solely for claims arising under subsection 14103(a), which states

> Whenever a shipper or receiver of property *requires* that any person who owns or operates a motor vehicle transporting property in interstate commerce . . . be assisted in the loading or unloading of such vehicle, the shipper or receiver shall be responsible for providing such assistance or shall compensate the owner or operator for all costs associated with securing and compensating the person or persons providing such assistance.

(Emphasis added).  The Court noted that it was unclear whether the plaintiffs were also seeking class certification under subsection 14103(b), which provides:

> It shall be unlawful *to coerce or attempt to coerce* any person providing transportation of property by motor vehicle for compensation in interstate commerce . . . to employ or pay one or more persons to load or unload any part of such property onto or from such vehicle[.]

(Emphasis added). The Court noted that it would be open to reexamining this issue on a motion for reconsideration, because it had not been fully briefed by the plaintiffs. Plaintiffs formally requested leave to file such a motion, and the Court granted that request. (Docket No. 184). Plaintiffs now argue that the facts demonstrating that defendants *required* drivers to hire lumpers also demonstrate that defendants *attempted to coerce* drivers to hire lumpers. Thus, plaintiffs argue, the class that was certified under subsection 14103(a) should also be certified under subsection 14103(b). The Court turns to that argument below.

## ANALYSIS

### I. STANDARD FOR CLASS CERTIFICATION

Federal Rule of Civil Procedure 23 establishes a two-step analysis for determining whether class certification is appropriate. First, plaintiffs must satisfy the four prerequisites of Rule 23(a). Second, the action must satisfy at least one of the three subdivisions of Rule 23(b).

#### A. Requirements of Rule 23(a)

A member of a class may sue as a representative party on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### 1. Numerosity, Typicality, and Adequacy

As noted above, plaintiffs' proposed class consists of the same members as the class this Court certified under subsection 14103(a). This Court has already determined that this group meets the numerosity requirement. The Court declines to revisit that determination here, and concludes that the Rule 23(a)(1) numerosity requirement is satisfied.

Similarly, the Court can quickly address the typicality and adequacy requirements. Defendant argues that the typicality requirement is not met because no class member meets plaintiffs' proposed definition. Defendant also contends that the adequacy requirement is not met because OOIDA – a small carrier – has interests that are antagonistic to large carriers and because plaintiff Rajkovacz is no longer delivering goods. Each of these arguments was considered and rejected in this Court's prior order, in connection with this Court's discussion of subsection 14103(a). Defendant makes no argument for how this analysis would be different under subsection 14103(b). Thus, this Court declines to revisit those arguments as well, and concludes that plaintiff has also satisfied the Rule 23(a)(3) typicality requirement and the Rule 23(a)(4) adequacy requirement.

### 2. Common Questions of Law or Fact

The more difficult requirement in this matter – and the requirement focused on in the parties' briefing – is the commonality requirement. "Commonality is not required on every question raised in a class action. Rather, Rule 23 is satisfied when the legal

question linking the class members is substantially related to the resolution of the litigation." *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (quotation omitted). Here, plaintiffs argue that the common legal question linking the class members is the following: did Supervalu's institution of its company-wide insurance requirement constitute an "attempt to coerce" drivers to hire lumpers, in violation of subsection 14103(b)? Plaintiffs argue that this question does not require an assessment of the individual circumstances of particular drivers, because in considering whether defendant made a company-wide "attempt," only *defendant's* actions are relevant. Moreover, because plaintiffs are now limited to pursuing declaratory and injunctive relief, the particular financial impact on individual drivers is irrelevant.

Defendant responds that this question is not well-suited for class certification because "attempt to coerce" claims require analysis of the actual impact of Supervalu's policy. Defendant contends that some drivers, for example, may have already been using lumpers voluntarily, and would not have been affected by any attempted coercion. In short, defendant argues, without citing to any authorities, that determining whether or not there has been an "attempt" requires attention to whether such an attempt was likely to succeed. The Court disagrees.

If plaintiffs were asking the Court to certify a class of drivers who had actually been coerced, then defendant's argument may well have been persuasive. This is because the question of actual coercion may have indeed required some assessment of the effect that Supervalu's policy had on particular drivers. *See* The American Heritage Dictionary of the English Language (4th ed. 2004) (defining coerce, in part, as "*[t]o bring about* by

force or threat") (emphasis added).  The Court agrees with the plaintiffs, however, that proving an "attempt" clearly requires much less.  Defendant is correct that there may be certain circumstances where drivers' choices would not have been influenced by Supervalu's insurance policy.  But this merely indicates that attempts in those circumstances would not have been fruitful; not that the attempts did not occur.[2]  In other words, just as a person could attempt to murder someone not likely to die, defendant could have attempted to coerce drivers not likely to hire lumpers.  Whether defendant's company-wide insurance policy constituted such a wide-ranging attempt remains to be determined.  But this Court agrees that in making that determination – in a case where plaintiffs are seeking no individualized relief – there is no need to make individualized assessments of the impact on particular drivers.  In other words, the possibility of different effects on the drivers does not preclude class certification on the question on whether there was a single, company-wide "attempt to coerce."  The Court therefore concludes that Rule 23(a)(2) is satisfied.

### B. Rule 23(b)(2)

As noted above, the class cannot be certified unless the actions satisfy at least one of the three subdivisions of Federal Rule 23(b).  Plaintiffs seek certification under Rule 23(b)(2), which provides that a class action may be maintained when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief to the class

---

[2] Moreover, even if a particular driver already had a practice of hiring lumpers, defendant's policy may have affected whether the driver *continued* to do so.

as a whole." Fed. R. Civ. P. 23(b)(2). "If the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2)." 7A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1775, at 470 (2d ed. 1986); *see DeBoer*, 64 F.3d at 1175.

The Court has found that plaintiffs have satisfied the Rule 23(a), and only injunctive and declaratory remains. Moreover, this Court determined in its prior order that a class with the same members met this requirement as to subsection 14103(a), which raises substantially similar issues.[3] Here, as there, the proposed class unites drivers sharing the common experience of having paid for lumping services and having lacked the insurance coverage required by Supervalu. Because common claims arise from this common factual experience, the Court finds that the class is also sufficiently cohesive. *See In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005). The Court therefore concludes that Rule 23(b)(2) is satisfied.

In conclusion, the Court grants plaintiffs' motion to reconsider. The Court finds that the plaintiffs' proposed class meets all of the requirements of Rule 23, and certifies this action as a class action under both 49 U.S.C. § 14103(a) and (b).

---

[3] While the issues raised under 14103(a) and (b) are indeed similar, the Court does not agree with defendant that this makes certification under subsection (b) unnecessary. While defendant is correct that identical relief is sought under both subsections, these subsections present alternative legal theories for obtaining that relief. Because it would be possible for plaintiffs to prevail under one theory and not the other, this motion is not moot.

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that plaintiffs' Motion for Reconsideration of the Court's Class Certification Order [Docket No. 188] is **GRANTED**.


DATED:  March 14, 2008                                         s/ John R. Tunheim         _
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                         United States District Judge