# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., JOSEPH RAJKOVACZ, CARL SCHAEFER, and CARL SCHAEFER LLC, | Civil No. 05-2809 (JRT/JJG) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| SUPERVALU, INC., | |
| Defendant. | |

Randall Herrick-Stare, Paul D. Cullen, Sr., and Paul D. Cullen, Jr., **THE CULLEN LAW FIRM**, 1101 Thirtieth Street NW, Suite 300, Washington D.C. 20007; Andrew J. Morrison, **KOLL MORRISON CHARPENTIER & HAGSTROM**, 332 Minnesota Street, Suite W-1430, St. Paul, MN 55101, for plaintiffs.

Steven J. Wells, Gabrielle D. Mead, Jessica J. Nelson, Michael Iwan, and Steven J. McLaird, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402-1498; Seth J. Leventhal, **DANIELS WYMORE PLLC**, 3165 Fernbrook Lane North, Plymouth, MN 55447, for defendant.

Plaintiffs Owner-Operator Independent Drivers Association, Inc. ("OOIDA"), Joseph Rajkovacz, Carl Schaefer, and Carl Schaefer LLC (collectively, "plaintiffs") brought this action alleging that defendant Supervalu, Inc. ("Supervalu") violated 49 U.S.C. § 14103. Supervalu now moves for summary judgment on plaintiffs' declaratory

and injunctive relief claims, and moves to exclude the plaintiffs' expert reports and expert testimony.

**BACKGROUND**

Plaintiff OOIDA is a non-profit trade association of professional truck drivers who own and operate heavy-duty trucks. OOIDA brings this action in a representative capacity. OOIDA drivers typically contract with vendors for transportation services and many transport goods to defendant Supervalu, a grocery wholesaler and retailer. Plaintiff Joseph Rajkovacz was an independent truck owner-operator providing interstate transportation of property for compensation on a per-load basis, and he delivered goods to Supervalu during the class period. He left the business in April 2006, but he is still a member of OOIDA. Plaintiff Carl Schaefer is a one-person motor carrier who provides interstate transportation of property for compensation on a per-load basis. Plaintiff Carl Schaefer LLC is a limited liability company of which Carl Schaefer is the sole owner and manager.

Plaintiffs have all engaged in the delivery of goods to Supervalu, a grocery wholesaler and retailer. Under federal law, any contract between a motor carrier and any other person relating to a delivery "shall specify, in writing, who is responsible for loading and unloading the property . . . from the motor vehicle." 49 U.S.C. § 14102(b). In the past, small groups of unloaders or "lumpers" unaffiliated with defendant Supervalu would gather at Supervalu's distribution centers and offer unloading services to drivers.

In 2005, Supervalu entered into exclusive contracts with two professional unloading services to provide all unloading services at its distribution centers.

In March 2005, Supervalu adopted a new insurance coverage requirement for drivers who wished to unload their own vehicles. Supervalu required the drivers to show proof of general liability insurance of $3 million annual aggregate and $1 million per occurrence limit, automobile liability insurance in the amount of $1 million combined single limit coverage, and fidelity bond or crime insurance of $50,000, although the last requirement was promptly eliminated after being initially posted. This insurance coverage requirement was in excess of the statutory minimum under 49 U.S.C. § 31139(b), which requires those who transport property by commercial motor vehicle to carry insurance of at least $750,000. In August 2005, Supervalu reduced the insurance coverage requirement to $1 million aggregate and $1 million per occurrence. After plaintiffs commenced this lawsuit on December 5, 2005, Supervalu modified the insurance coverage requirement once again, and now only requires that drivers who wish to unload their own vehicles show proof of compliance with 49 U.S.C. § 31139(b).

Plaintiffs brought this action under 49 U.S.C. § 14103, challenging the insurance coverage requirement and Supervalu's practice of receiving goods on pallets, allegedly without the provision of proper unloading equipment. Specifically, plaintiffs allege violations of § 14103(a), arguing that the insurance requirement and failure to provide adequate unloading equipment constituted "requirements" to be assisted by lumpers in unloading their trucks, and that plaintiffs were not reimbursed for employing that assistance. Plaintiffs also allege violations of 49 U.S.C. § 14103(b), claiming that

-3-

Supervalu, through the same practices that constituted "requirements" under § 14103(a), coerced or attempted to coerce plaintiffs to employ or pay lumpers to unload property from their motor vehicles at Supervalu docks. Plaintiffs sought restitution, declaratory judgment, and injunctive relief for those violations. The Court granted Supervalu's motion for summary judgment on the restitution claims in an earlier Order. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, No. 05-2809, 2007 WL 1576120, at *4-5 (D. Minn. June 27, 2007).

The Court certified a class for plaintiffs' declaratory judgment and injunctive relief claims arising out of § 14103(a) as those claims relate to Supervalu's insurance coverage requirement. The class is defined as "All owners or operators of motor-vehicles used to deliver 'carrier loads' to Supervalu's distribution centers between March 28 and December 21, 2005, who a) at the time of delivery, did not meet Supervalu's minimum proof of insurance requirement then in effect; and b) paid for lumping services." *Supervalu*, 2007 WL 1576120, at *7-9. The Court later certified a class under the same definition for plaintiffs' declaratory judgment and injunctive relief claims under § 14103(b) regarding whether the heightened insurance requirement constituted an attempt to coerce plaintiffs to employ lumpers. The remainder of plaintiffs' claims, which relate to actual coercion under § 14103(b) and to all claims based on the failure to provide adequate unloading equipment, are not certified as a class.

Supervalu now moves for summary judgment, or in the alternative for class decertification. Supervalu also moves to exclude plaintiffs' expert reports and testimony.

For the reasons stated below, the Court grants in part and denies in part Supervalu's motions.

**DISCUSSION**

**I.     STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

**II.    49 U.S.C. § 14103(a): REQUIREMENT AND REIMBURSEMENT**

Section 14103(a) provides that if

> a shipper or receiver of property requires that any person who owns or operates a motor vehicle transporting property in interstate commerce . . . be assisted in the loading or unloading of such vehicle, the shipper or receiver shall be responsible for providing such assistance or shall compensate the owner or operator for all [associated] costs.

49 U.S.C. § 14103(a). During the class period, plaintiffs allege that Supervalu "required" motor vehicle owners and operators to be assisted with unloading in two ways. First, plaintiffs allege that Supervalu's requirement of proof-of-insurance coverage above the

statutory minimum, *see* 49 U.S.C. § 31139(b), effectively precluded the drivers' option to unload their own trucks because the drivers could not afford the additional insurance coverage.[1] Second, plaintiffs allege that by electing to receive its goods on palletized freight without providing drivers access to adequate unloading equipment, Supervalu drivers were required to employ lumping services for assistance in unloading their trucks.

## A.    Reimbursement

Supervalu argues that even if the Court concluded that those actions did or did not constitute "requirements," which Supervalu does not concede, plaintiffs have failed to produce evidence that class members were not reimbursed. The Court previously held that "[t]o prove that Supervalu violated § 14103(a), plaintiffs must show that neither a receiver nor a shipper paid a driver for lumping service costs incurred at Supervalu." *Supervalu*, 2007 WL 1576120, at *6; *see also* 49 U.S.C. § 14103(a) (noting that where the receiver requires that a driver be assisted in unloading, "the **shipper or receiver** shall be responsible for providing such assistance or shall compensate the owner or operator for all [associated] costs." (emphasis added)). The Court reasoned, "Allowing payment by a shipper to relieve a receiver from having to compensate a driver when the receiver

---

[1] The Court previously concluded that "Supervalu cannot be considered to have required the use of lumpers solely by its imposition of a requirement for insurance above the statutory minimum if the insurance coverage requirement is reasonable. On the other hand, if the insurance coverage requirement was unreasonable and unattainable for drivers, Supervalu could be considered to have in effect required drivers to pay for lumping services in violation of § 14103(a)." *Supervalu*, 2007 WL 1576120, at *3. Although the parties do not abandon their arguments regarding whether these actions constituted requirements, the focus of their dispute at summary judgment is whether there is a fact question regarding reimbursement for lumping costs.

CASE 0:05-cv-02809-JRT-JJG   Document 265   Filed 03/24/09   Page 7 of 20

requires a driver to use lumpers may be burdensome for the driver, but this interpretation is not absurd." *Supervalu*, 2007 WL 1576120, at *6.

Plaintiffs respond that only reimbursement by a **shipper** is sufficient to satisfy § 14103(a)'s statutory requirements and argue that they have produced substantial evidence that class members were not reimbursed by shippers. (*See, e.g.*, Pl.'s Opp'n Mem., Docket No. 253 at 16). Moreover, plaintiffs contend that many of the reimbursements at issue were made by one class member, such as a motor carrier, to another class member, such as an owner-operator. According to plaintiffs, such reimbursement does not relieve Supervalu of its liability under § 14103(a). (*Id.*) Plaintiffs' arguments, however, are clearly contradicted by the Court's prior holding and fail to account for the nature of the trucking industry.

The Court has held that "plaintiffs must show that neither a **receiver** nor a shipper paid a driver for lumping service costs incurred at Supervalu." *Supervalu, Inc.*, 2007 WL 1576120, at *6 (emphasis added). To the extent that plaintiffs argue that reimbursement by one class member to another may not relieve Supervalu of liability, plaintiffs fail to present evidence that where one class member reimbursed another class member, the former was not reimbursed by a shipper or receiver. Moreover, if the Court concluded that only **direct** reimbursement from a shipper or receiver satisfied § 14103(a), plaintiff Joseph Rajkovacz (who admits that he was reimbursed by a broker, which was reimbursed by a shipper) would be entitled to double compensation for employing lumping services. The argument that the statute would permit such double recovery,

-7-

however, is untenable.  Mere **indirect** reimbursement will not allow plaintiffs to proceed with their claims of non-reimbursement.

Plaintiffs present affidavits, deposition testimony, Rule 26(a) disclosures, and the expert report of Dr. Stanley Sedo to demonstrate that plaintiffs and other members of the class were not reimbursed for lumping services at Supervalu docks.  (*Id.* at 16.)  For the following reasons, this evidence is not sufficient to establish that members of the class were not reimbursed.

Plaintiffs cite their Rule 26(a) supplemental disclosures, but only one individual listed in the disclosures claims that he was not reimbursed for lumping services by a broker, motor carrier, shipper, or receiver.  (Ex. 12 at ¶¶ 2, 4, 5, and 6.)  Even then, the declaration states only that the individual "**may** have documentation regarding deliveries and use of lumpers." (*Id.* at ¶ 2 (emphasis added).)  Plaintiffs also note that another class member, Phillip Powers, indicated that he was "not reimbursed by the shipper" on two separate occasions after Powers employed lumpers at a Supervalu site.  (Powers Decl., Docket No. 211, Ex. 10, ¶¶ 4-5.)  Powers does not indicate, however, that he was not reimbursed by someone other than a shipper (e.g., by a freight brokers).  (*Id.*)

Plaintiffs further cite the representative plaintiffs' deposition testimony, but in the lone instance in which plaintiff Joseph Rajkovacz claims that he was not reimbursed by Supervalu, (Rajkovacz Dep., Docket No. 254, Ex. 3 at 104-05), there is no indication that the incident occurred during the class period or that Rajkovacz was required under the circumstances to hire lumpers.  Further, there is no evidence at all that Schaefer was not reimbursed after he employed lumpers at Supervalu sites.

Finally, plaintiffs direct the Court to the declaration of class member Howard Cowan, who states, "With regard to lumper fees I paid at Supervalu sites, I sought reimbursement of them from brokers and shippers, but those requests for reimbursement were rejected." (Cowan Decl., Docket No. 211-17.)

Yet plaintiffs have not presented more than a "scintilla" of evidence that drivers were not reimbursed for lumping services at Supervalu docks. *See Frosty Treats, Inc. v. Sony Computer Entertainment Am. Inc.*, 426 F.3d 1001, 1005 (8th Cir. 2005). The Cowan declaration, alone, clearly avers a driver was not reimbursed by any party, but even that assertion fails to identify any specific incident of non-reimbursement. Moreover, the Cowan declaration represents the only evidence that a class member was not appropriately reimbursed, despite the extensive number of deliveries to Supervalu loading docks during the class period. Accordingly, Supervalu's motion as to claims for declaratory judgment and injunctive relief arising under § 14103(a) is granted.

### B. Dr. Sedo's Expert Report

In their attempt to provide evidence of non-reimbursement, plaintiffs also cite Dr. Stanley Sedo's expert report (the "Sedo Report"), which opines that a significant percentage of class members were not reimbursed by Supervalu for employing lumping services. The Sedo Report, however, does not identify any specific incident in which Supervalu did not reimburse its drivers. Rather, the report is based on the compiled responses from a survey of OOIDA members, which was designed and conducted by

OOIDA employee Thomas Weakley. Supervalu moves to exclude the Sedo Report, arguing that its methodology is fundamentally flawed.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Fed. R. Evid. 702. Under Rule 702, proposed expert testimony must satisfy three prerequisites to be admitted. *See Lauzon v. Senco Prods. Inc.,* 270 F.3d 681, 686 (8th Cir. 2001). First, evidence based on scientific, technical, or specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. *Id.* Second, the proposed witness must be qualified. *Id.* Third, the proposed evidence must be reliable or trustworthy in the evidentiary sense, so that if the finder of fact accepts it as true, it provides the assistance the finder of fact requires. *Id.* The district court has a "gatekeeping" obligation to make certain that all testimony admitted under Rule 702 satisfies these prerequisites. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 597-98 (1993). But an expert's opinion should be excluded as unreliable only if that "opinion is so fundamentally unsupported that it can offer no assistance to the jury." *Bonner v. ISP Techs.,* 259 F.3d 924, 929 (8th Cir. 2001).

The Court agrees with Supervalu that the Sedo Report must be excluded. The Sedo Report is based on interpretations of the results of a questionnaire conducted by Weakley, who had no expertise in conducting surveys. Further, the substance of the questionnaire yields grave concerns about the reliability of Dr. Sedo's analysis. Supervalu's rebuttal expert, Paul A. Talmey, notes that the population surveyed was improperly defined and was not representative of the target population. (Talmey Report at 6.) Talmey also notes concerns with the accuracy of the reporting of data, the failure

to analyze the data in accordance with "acceptable statistical principles," and the lack of safeguards to ensure objectivity in the survey process.

More importantly, some of the survey's questions were so ambiguous that any "report" on or analysis of answers to those questions is unreliable and untrustworthy. For example, questions 4a through 4c of the survey ask OOIDA members: "For the deliveries you made in the last 12 months at docks, approximately how many of them were unloaded: a. By yourself, b. By someone else at no cost to you, or c. By someone else at cost to you." It is unclear, however, what the phrase "cost to you" means. At the very least, it conflates the ideas of payment and reimbursement such that an individual who was reimbursed for lumping services could answer "b" or "c" with equal honesty and accuracy. Dr. Sedo, however, attempts to extrapolate from those answers conclusions regarding the "reimbursement" of class members. Given the nature of the legal and factual issues discussed above, the survey provides unsound bases for Sedo's conclusions and is not sufficiently probative to be considered as evidence of non-reimbursement.

Although the Court concedes that many reliable statistical studies may have "flaws," the flaws in the Sedo Report are significant. Accordingly, the Court grants Supervalu's motion to exclude the Sedo Report. The Court defers decision, however, on Supervalu's motion to exclude plaintiffs' additional expert reports and testimony, and will address any residual issues regarding those reports if the case proceeds to trial.

### III. 49 U.S.C. § 14103(b): COERCION AND ATTEMPTED COERCION

49 U.S.C. § 14103(b) provides that it is

> unlawful to coerce or attempt to coerce any person providing transportation of property by motor vehicle for compensation in interstate commerce . . . to load or unload any part of such property onto or from such vehicle or to employ or pay one or more persons to load or unload any part of such property onto or from such vehicle.

Plaintiffs contend that by requiring drivers to carry higher insurance coverage than the statutory minimum and by receiving palletized freight without providing drivers with adequate unloading equipment, Supervalu coerced or attempted to coerce drivers to employ and pay lumpers.

The parties dispute the definition of "coercion," which the Court defined as "to bring about by force or threat." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, No. 05-2809, 2008 WL 706600, at *3 (D. Minn. March 14, 2008) (quoting The American Heritage Dictionary of the English Language (4th ed. 2004)). Supervalu contends that under § 14103(b), "'coercion' must involve some independently wrongful act that forces a driver to use lumping services and that causes harm over and above unloading expenses for which a driver may be reimbursed pursuant to § 14103(a)." (Def. Supp. Mem., Docket No. 240 at 16.) That is, Supervalu argues that a requirement to employ lumpers under § 14103(a), when accompanied by reimbursement for the drivers' expenses, cannot also constitute illegal coercion under § 14103(b) because such a construction would render subsection (a) "superfluous." (*Id.*)

The Court disagrees. The question of reimbursement is unique to subsection (a). That is, whether or not an individual is reimbursed for the employment of lumping

-12-

services is irrelevant to the question of whether Supervalu coerced or attempted to coerce drivers to use contracted lumping services. The two provisions require proof of entirely different elements. A violation of subsection (b)'s prohibition on actual coercion occurs when a driver succumbs to force or threat and employs others to unload property from his truck. A violation for an attempt to coerce under subsection (b) would occur even before that moment in time, as proving attempt does not require actual harm to the drivers. *See Supervalu*, 2008 WL 706600, at *3 ("[P]roving an 'attempt' clearly requires much less [than proving actual coercion]."). On the other hand, a violation of subsection (a) occurs when the driver is not reimbursed for expenses for employing lumping services – which would likely occur well after the driver had left the unloading dock.

Subsection (b) simply requires that Supervalu attempted to use or used force or threat to ensure that class members employed lumpers to unload property from their trucks. The legislative history supports such a basic definition, indicating that § 14103 was designed to prohibit coercive or "extortionate" practices. *Jessep v. Jacobson Transp. Co., Inc.*, 350 F.3d 739, 742 (8th Cir. 2003) (citing H.R. Rep. No. 96-1069, 96th Cong., 2d Sess., 31 (1980)).

The Court now turns to the Supervalu practices alleged by plaintiffs to constitute attempts to coerce or actual coercion under § 14103(b).

### A. Insurance Coverage Requirement

#### 1. Declaratory Relief

Plaintiffs argue that Supervalu's heightened insurance coverage requirement amounted to attempted coercion because if a driver was unable to provide proof of the higher coverage, the only other options for the driver were to hire a lumping service or leave the dock without unloading the cargo, which plaintiffs contend is not a real option for drivers. (Pl.'s Opp'n Mem., Docket No. 253 at 25-26.)

Plaintiffs present evidence that Supervalu may have had a financial motive to provide such a "Hobson's Choice" to drivers. For example, plaintiffs point to an e-mail from the head of Supervalu's "Risk Management" department to the head of "Strategic Sourcing," which stated, "these [insurance] limits are relatively high. If you recall, our earlier discussions were along the lines that we wanted to discourage having people other than our national contracted lumpers do the unloading." (Docket No. 254, Ex. 14.) Further, plaintiffs produce a PowerPoint presentation by Supervalu that indicated that Supervalu would benefit from a significant increase in revenues from fees paid to it by lumping services, assuming that drivers used lumping services instead of unloading the trucks without assistance. (*Id.*, Exs. 5, 6; Hagen Dep., Docket No. 254, Ex. 16 at 111-15 ("If those drivers hired the lumpers there was a potential for increased revenue by those amounts. If the driver saw value in our unloading service and wanted to hire them there was an opportunity.").) Plaintiffs further introduce expert reports and testimony suggesting that drivers are susceptible to coercion to unload at docks, particularly given

-14-

that time spent at docks unloading or waiting to unload may cost a driver more money than the lumping services. (Pl.'s Opp'n Mem., Docket No. 253 at 27-28.)

Although Supervalu's motive for implementing the insurance coverage requirement may not be dispositive to the determination that Supervalu attempted to coerce class members into employing lumping services, its possible motive is still relevant. Plaintiffs further provide deposition testimony and other evidence that if the driver did not carry the higher insurance coverage, employing and paying lumpers was the only remaining option because leaving the docks without unloading was not feasible. If drivers were given no meaningful alternative outside of complying with the insurance requirement or employing lumpers, a rational trier of fact could find that Supervalu attempted to force class members to use lumping services. Moreover, plaintiffs need not establish that any driver suffered actual harm to prove an attempt to coerce. *See Supervalu*, 2008 WL 706600, at *3. Accordingly, Supervalu's motion as to the class-certified claim for declaratory judgment based on Supervalu's attempted coercion is denied.

There is also a dispute of fact regarding whether Supervalu actually coerced individual plaintiffs Joseph Rajkovacz and Carl Schaeffer. The Court previously held that "[t]he determination of whether drivers were [actually] coerced by the insurance coverage requirement will also require a fact-laden inquiry into the reasonableness of the insurance coverage requirement. In addition, it will require an individualized inquiry as to each driver's situation." *Supervalu*, 2007 WL 1576120, at *3 n.5.

At summary judgment, Supervalu rests solely on its argument that a "requirement" under § 14103(a) cannot constitute coercion under § 14103(b). The Court has rejected that interpretation of the statute. Further, in addition to producing evidence that drivers without the higher insurance coverage were not given feasible alternatives to hiring lumpers, Supervalu has introduced testimony by plaintiffs Rajkovacz and Schaefer stating that because they did not have documentation of Supervalu's required insurance coverage, and in the face of leaving the loading docks without unloading, they were forced to hire lumpers. (Rajkovacz Dep., Docket No. 254, Ex. 3 at 102-03; Schaefer Dep., Docket No. 254, Ex. 11 at 134-137.) Thus, plaintiffs have produced the requisite evidence showing the effect on Rajkovacz and Schaefer, and the Court accordingly denies Supervalu's motion as to declaratory judgment on plaintiffs' actual coercion claim.

### 2. Injunctive Relief

Plaintiffs also seek to enjoin Supervalu from future violations under 49 U.S.C. § 14704(a)(1), which provides for injunctive relief to a private plaintiff for violations of § 14103. Supervalu argues that because it voluntarily eliminated the higher insurance coverage requirement in December 2005, there is no longer a need for injunctive relief. The Court, however, has already found this argument unpersuasive at summary judgment. *Supervalu*, 2007 WL 1576120, at *4. Supervalu further claims that it has represented to the Court that Supervalu "will not revert to its August 2005 [insurance

coverage] policy unless the Court declares that Supervalu's August 2005 policy does not violate 49 U.S.C. § 14103." (*Id.* at 21.)

> [t]he purpose of an injunction is to prevent future violations, and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. The necessary determination is that *there* **exists some cognizable danger of recurrent violation**, something more than the mere possibility which serves to keep the case alive . . . .

As the United States Supreme Court has explained,

*United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (emphasis added); *see also Supervalu*, 2007 WL 1576120, at *4 (holding that the question in the instant case is whether there is evidence of "a cognizable danger of recurrent violation").

The passage of time without recurrent violations may strengthen Supervalu's argument but, "[a] court's power to grant injunctive relief survives discontinuance of illegal conduct." *W.T. Grant*, 345 U.S. at 633. Although the Court acknowledges Supervalu's representations that it will not revert to requiring higher insurance coverage, such representations do not bind Supervalu in the future. Given Supervalu's previous actions and commitment to the permissibility of higher insurance coverage requirements, there remains a cognizable danger, however slight, that Supervalu will re-implement the requirement. Accordingly, the Court denies Supervalu's motion as to the claims for injunctive relief based on the insurance requirement.

### B. Election to Receive Goods on Palletized Freight

Plaintiffs also contend that Supervalu's election to receive goods on palletized freight, without providing the necessary equipment to unload such freight, constituted

-17-

coercion or an attempt to coerce drivers to hire lumping services. This claim was not certified as a class, and thus the Court only considers these claims with respect to Rajkovacz and Schaefer. The individual plaintiffs, however, have failed to produce evidence of such coercion of or attempts to coerce Rajkovacz and Schaefer by not providing appropriate equipment for unloading, and there is no evidence or testimony suggesting that Rajkovacz and Schaefer hired lumping services as a result. Accordingly, the Court grants Supervalu's motion as to claims for declaratory judgment and injunctive relief based on Supervalu's failure to provide adequate loading equipment.

## III. DECERTIFICATION

"A district court has a duty to assure that a class once certified continues to be certifiable under Fed. R. Civ. P. 23(a)." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1145 (8th Cir. 1999). Supervalu now contends that at the close of discovery, it is clear that class certification is no longer appropriate because the individual plaintiffs cannot meet the typicality and numerosity requirements under Rule 23(a). Given the Court's disposition on Supervalu's motion for summary judgment, only two class-certified claims remain: plaintiffs' declaratory and injunctive relief claims arising under § 14103(b) and based on Supervalu's attempt to coerce drivers to employ lumping services by implementing an insurance coverage requirement higher than the statutory minimum.

The Court defined the class as "All owners or operators of motor-vehicles used to deliver 'carrier loads' to Supervalu's distribution centers between March 28 and December 21, 2005, who a) at the time of delivery, did not meet Supervalu's minimum

proof of insurance requirement then in effect; and b) paid for lumping services." As discussed above, however, the representative parties' claims are typical of the claims of the class, and the evidence produced demonstrates a continuing dispute of fact about whether Supervalu attempted to coerce the representative plaintiffs and the entire class to employ lumpers. Further, the Court has previously found that the members of the class are too numerous to be practicably joined, and there is no evidence to suggest that is no longer true. Accordingly, Supervalu's motion to decertify the class is denied.

This case will be placed on the Court's next available trial calendar

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Supervalu, Inc.'s Motion for Summary Judgment and for Class Decertification [Docket No. 238] is **GRANTED in part** and **DENIED in part** as follows**:**

    a. The motion is **GRANTED** as to Count I of the Amended Complaint regarding declaratory judgment and injunctive relief for violations of 49 U.S.C. § 14103(a); and regarding declaratory judgment and injunctive relief for violations of 49 U.S.C. § 14103(b) to the extent that those claims relate to failure to provide adequate equipment for unloading palletized freight.

    b. The motion is **DENIED** in all other respects.

      2.      Defendant Supervalu, Inc.'s Motion to Exclude Reports and Testimony of Experts Sedo, Pakter, and Swan  [Docket No. 230] is **GRANTED in part** and **DENIED in part** as follows**:**

         a.      The motion is **GRANTED** as to the Sedo Report; and

         b.      The motion is **DENIED without prejudice** in all other respects.


DATED:  March 24, 2009                                         ____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                                  United States District Judge